1   PAUL A. CAINTIC (D.C. Bar No. 1779847)
    Trial Attorney
2   United States Department of Justice
    Environment & Natural Resources Division
3   150 M Street, N.E.
    Washington, D.C. 20002
4   Tel: (202) 514-2593
    paul.caintic@usdoj.gov
5

6   *Attorney for Federal Defendants*

7
                    **UNITED STATES DISTRICT COURT**
8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10

11  FRIENDS OF CALWA, INC. and
    FRESNO BUILDING HEALTHY
12  COMMUNITIES,                         Case No. 1:23-CV-00353-JLT-EPG

13          *Plaintiffs & Petitioners*,   **FEDERAL DEFENDANTS' NOTICE OF**
                                           **MOTION AND MOTION FOR VOLUNTARY**
14       v.                               **REMAND AND MEMORANDUM IN**
                                           **SUPPORT**
15  CALIFORNIA DEPARTMENT OF
    TRANSPORTATION, *et al.*,
16
17          *Defendants & Respondents*

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND

Federal Defendants Federal Highway Administration ("FHWA"), Shailen Bhatt, in his official capacity as Administrator of FHWA, the United States Department of Transportation, and Peter Buttigieg, in his official capacity as Secretary of Transportation, hereby move this Court for a voluntary remand.  Specifically, Federal Defendants request a remand of FHWA's Clean Air Act ("CAA" or the "Act") conformity determination for a highway reconstruction Project located in South Fresno, California that is the subject of Plaintiffs' claims.  A remand will allow FHWA to hold a public comment period for certain technical analyses that underpinned the conformity determination and engage in additional interagency consultation, thereby curing the alleged procedural defects Plaintiffs claim in their First Amended Complaint, ECF No. 14.  For the reasons set forth in the accompanying Memorandum in Support, Federal Defendants request that the remand be without vacatur.

Federal Defendants have conferred with counsel for Plaintiffs and Defendant California Department of Transportation ("Caltrans").  Defendant Caltrans does not oppose this motion.  Plaintiffs reserve their right to wait to take a position until after they review this motion.

DATED:  December 4, 2023         Respectfully submitted,

                                 */s/  Paul A. Caintic*
                                 PAUL A. CAINTIC (D.C. Bar No. 1779847)
                                 United States Department of Justice
                                 Environment & Natural Resources Division
                                 150 M Street, N.E.
                                 Washington, D.C. 20002
                                 Tel:  (202) 514-2593
                                 paul.caintic@usdoj.gov

                                 *Counsel for Federal Defendants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATION OF PRE-FILING MEET AND CONFER EFFORTS</u>

Pursuant to the Court's Standing Order, I, Paul Caintic, as counsel for Federal Defendants, certify that meet and confer efforts have been exhausted.

On November 9, 2023, I had a videoconference with Cassandra Hoff, counsel for Defendant Caltrans, in which I informed her that Federal Defendants planned to request a voluntary remand of the CAA conformity determination that is the subject of this litigation. I also informed her that Federal Defendants would ask that the remand be without vacatur. I informed Ms. Hoff that Federal Defendants would file a motion to that effect, and I asked her for Defendant Caltrans' position. On November 14, 2023, Ms. Hoff and I had a follow-up phone call where I answered Ms. Hoff's questions about Federal Defendants' anticipated actions on remand. Later that day, Ms. Hoff informed me by email that Caltrans does not plan to oppose this motion.

On November 15, 2023, I emailed Plaintiffs' multiple counsel: Stephanie Safdi, Ashley Werner, and Valerie Feldman, who are Plaintiffs' three primary counsel of record; Phoebe Seaton, co-founder, co-executive director, and lawyer from Plaintiffs' counsel organization Leadership Counsel for Justice & Accountability; Rica Garcia, a legal fellow at Stanford University's Environmental Law Clinic; and Hannah Motley and Lisa Lu, two student attorneys at the Stanford Environmental Law Clinic. I informed them that Federal Defendants planned to file a motion for voluntary remand of FHWA's conformity determination and that we would request the remand be without vacatur. On November 16, 2023, I had a videoconference with Plaintiffs' counsel. All of Plaintiffs' counsel listed above were present except for Ms. Seaton. Ms. Hoff was also present for Defendant Caltrans. I answered Plaintiffs' counsel's multiple

questions about Federal Defendants' plans during the remand process and why Federal

Defendants believed remand without vacatur was most appropriate.  Plaintiffs' counsel informed

me that they would try to give me their position as soon as possible, but that they may be delayed

due to the Thanksgiving holiday.  On November 21, 2023, Ms. Werner informed me via email

that Plaintiffs would be delayed in communicating their position on this motion due to Plaintiffs'

and Plaintiffs' counsel's office closures during the Thanksgiving holiday.  Ms. Werner further

informed me that if Federal Defendants filed their motion and Plaintiffs decided not to oppose it

after reviewing the papers, Plaintiffs will submit a filing to that effect.  On November 28, 2023, I

asked Plaintiffs via email whether they had come to a position on the motion.  That evening, Ms.

Safdi informed me via email that Plaintiffs appreciated the opportunity to provide FHWA with

additional public comments during the remand period, but that Plaintiffs would wait to review

Federal Defendants' motion before deciding whether to oppose the request in full or in part.

DATED:  December 4, 2023                Respectfully submitted,

*/s/   Paul A. Caintic*
PAUL A. CAINTIC (D.C. Bar No. 1779847)
United States Department of Justice
Environment & Natural Resources Division
150 M Street, N.E.
Washington, D.C. 20002
Tel:  (202) 514-2593
paul.caintic@usdoj.gov

*Counsel for Federal Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

NOTICE AND MOTION FOR VOLUNTARY REMAND ............................................................i

CERTIFICATION OF PRE-FILING MEET AND CONFER EFFORTS ................................. ii

I.      INTRODUCTION .................................................................................1

II.     LEGAL BACKGROUND ......................................................................1

     A.     The Clean Air Act.......................................................................1

     B.     Clean Air Act Transportation Conformity Regulations .............................3

III.    FACTUAL BACKGROUND ................................................................6

     A.     Origin of this Litigation and Environmental Reviews .............................6

     B.     This Litigation ...........................................................................9

IV.    STANDARD OF REVIEW ..................................................................10

V.     ARGUMENT ....................................................................................10

     A.     FHWA is entitled to reconsider its own decision ..................................11

     B.     Remand without vacatur is most appropiate here..................................13

VI.    CONCLUSION .................................................................................16

CERTIFICATE OF SERVICE ....................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. NRC*,
   988 F.2d 146 (D.C. Cir. 1993) ................................................................................14

*Cal. Cmtys. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012) ...............................................................10, 11, 12, 13, 14

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
   375 F.3d 412 (6th Cir. 2004) ................................................................................12

*Comm. for a Better Arvin v. EPA*,
   786 F.3d 1169 (9th Cir. 2015) ...............................................................................2

*Cook Inletkeeper v. EPA*,
   400 F. App'x 239 (9th Cir. 2010) ...........................................................................14

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
   69 F.4th 588 (9th Cir. 2023) .................................................................................14

*Ethyl Corp. v. Browner*,
   989 F.2d 522 (D.C. Cir. 1993) ...............................................................................11

*Hall v. Bellard*,
   157 F. App'x. 992 (9th Cir. 2005) .........................................................................5, 6
,
*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ................................................................................14

*In re Clean Water Act Rulemaking*,
   60 F.4th 583 (9th Cir. 2023) ................................................................................13

*Limnia, Inc. v. United States Dep't of Energy*,
   857 F.3d 379 (D.C. Cir. 2017) ...........................................................................13, 14

*Nat'l Wildlife Fed'n v. Espy*,
   45 F.3d 1337 (9th Cir. 1995) ................................................................................10

*Pollinator Stewardship Council v. EPA*,
   806 F.3d 520 (9th Cir. 2015) ................................................................................14

*SKF USA Inc. v. United States*,
   254 F.3d 1022 (Fed. Cir. 2001) ............................................................11

*Trujillo v. Gen. Elec. Co.*,
   621 F.2d 1084 (10th Cir. 1980) ......................................................1, 11

*United States v. Texas*,
   599 U.S. 670 (2023) ...........................................................................13

*Util. Solid Waste Activities Grp. v. EPA*,
   901 F.3d 414 (D.C. Cir. 2018) ...........................................................11

**Statutes**

5 U.S.C. § 702 ...........................................................................................13

5 U.S.C. § 706(2)(A) ...................................................................................9

23 U.S.C. § 327 ...........................................................................................7

42 U.S.C. § 7407(a) .....................................................................................2

42 U.S.C. § 7407(d)(1) ................................................................................2

42 U.S.C. § 7409 ..........................................................................................2

42 U.S.C. § 7409(b) .....................................................................................2

42 U.S.C. § 7410 ..........................................................................................2

42 U.S.C. § 7502(c)(6) .................................................................................2

42 U.S.C. § 7502(c)(9) .................................................................................2

42 U.S.C. § 7505a(a) ....................................................................................3

42 U.S.C. § 7506(c)(1) .................................................................................3

42 U.S.C. § 7506(c)(1)(A)-(B) .....................................................................3

**Code of Federal Regulations**

40 C.F.R. § 50.6 ...........................................................................................2

40 C.F.R. § 50.7 ..................................................................................................2

40 C.F.R. § 50.13 ................................................................................................2

40 C.F.R. § 50.18 ................................................................................................2

40 C.F.R. Part 93, subpart A ...............................................................................4

40 C.F.R. § 93.101 ..............................................................................................4

40 C.F.R. § 93.102(b) ..........................................................................................4

40 C.F.R. § 93.105(c) ..........................................................................................5

40 C.F.R. § 93.105(e) .......................................................................................5, 6

40 C.F.R. § 93.116(a) .......................................................................................4, 5

40 C.F.R. § 93.123(b)(1) ..................................................................................4, 5

40 C.F.R. § 93.123(b)(1)(i)-(ii) ...........................................................................9

**Federal Register**

58 Fed. Reg.62188 (Nov. 24, 1993) ....................................................................4

73 Fed. Reg. 66759 (Nov. 12, 2008) ...................................................................7

# I.    INTRODUCTION

"Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980).  This case concerns FHWA's determination that reconstruction of two highway interchanges in South Fresno, California, conformed with the San Joaquin Valley's state implementation plans under the Clean Air Act. This conformity determination, Plaintiffs argue, is both substantively and procedurally deficient. It is procedurally deficient, Plaintiffs claim, because two documents were not made available for public comment:  an August 2022 Air Quality Conformity Analysis and a July 2020 Interagency Consultation Memorandum.  The former document, Plaintiffs argue, should have also been made available to interagency consultation partners.

Federal Defendants now seek a voluntary remand in lieu of a merits decision so that FHWA may reconsider its conformity determination in the first instance and save judicial resources.  If remand is granted, FHWA will put out the two documents for public comment and circulate the August 2022 Air Quality Conformity Analysis to its interagency consultation partners for their feedback.  Remand should be without vacatur of the conformity determination. Reconstruction of the two highway interchanges will not begin until at least October 2025, and FHWA anticipates completing the additional processes and reconsideration of its decision before that date.  Leaving the conformity determination in place during this nearly two-year window will not harm Plaintiffs.

## II.   LEGAL BACKGROUND

### A. The Clean Air Act

The Clean Air Act ("CAA" or "the Act") established "a uniquely important system of cooperative federalism in the quest for clean air." *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1173 (9th Cir. 2015). Under the Act, EPA sets national ambient air quality standards, or "NAAQS," for certain common air pollutants called "criteria pollutants." 42 U.S.C. § 7409. NAAQS are established to provide the requisite protection for public health and welfare. *See id*. § 7409(b). Among others, EPA has established NAAQS for particulate matter that reflect different sizes of particulates: particulates that are 10 micrometers or smaller in diameter ("PM10"), and those that are 2.5 micrometers or smaller in diameter ("PM2.5"). 40 C.F.R. §§ 50.6, 50.7, 50.13, 50.18. These are commonly referred to as the PM10 NAAQS and PM2.5 NAAQS. After EPA sets the NAAQS, the agency designates geographic areas with air quality that does not meet (or that contributes to ambient air quality in a nearby area that does not meet) the NAAQS as "nonattainment" areas. 42 U.S.C. § 7407(d)(1).

The primary responsibility then shifts to the states. The Act directs each state with a nonattainment area to develop a state implementation plan, or "SIP," that the state will use to bring its nonattainment areas into compliance with the NAAQS. 42 U.S.C. §§ 7407(a), 7410. These SIPs must include a variety of elements, such as enforceable emissions limitations, schedules for compliance, and contingency measures. *Id*. §§ 7502(c)(6); 7502(c)(9). EPA then reviews the SIP and, if the agency approves it, the SIP becomes enforceable as federal law. *Comm. For a Better Arvin*, 786 F.3d at 1174 (finding that once EPA approves a SIP, it becomes federal law and cannot be changed absent approval from EPA). If a former

nonattainment area later achieves compliance with the NAAQS, and seeks redesignation, it must then develop, submit to EPA for approval, and implement a "maintenance plan" to provide for the maintenance of the NAAQS.  42 U.S.C. § 7505a(a).

Section 7506(c) then provides that "[n]o department, agency, or instrumentality of the Federal Government shall engage in, support in any way or provide financial assistance for, license or permit, or approve, any activity which does not conform to an implementation plan after it has been approved or promulgated under section 7410 of this title."  42 U.S.C. § 7506(c)(1).  "Conformity" is defined in the statute:

> Conformity to an implementation plan means—
>
> (A) conformity to an implementation plan's purpose of eliminating or reducing the severity and number of violations of the national ambient air quality standards and achieving expeditious attainment of such standards; and
>
> (B) that such activities will not—
>    (i) cause or contribute to any new violation of any standard in any area;
>    (ii) increase the frequency or severity of any existing violation of any standard in any area; or
>    (iii) delay timely attainment of any standard or any required interim emissions reductions or other milestones in any area.

*Id.* § 7506(c)(1)(A)-(B).  In short, a federal agency must ensure that a project proposed for construction in a nonattainment or maintenance area conforms with that area's state implementation plans before providing that project with any financial assistance, licenses, permits, or other approvals.

**B. Clean Air Act Transportation Conformity Regulations**

To implement Section 7506(c), EPA promulgated the Transportation Conformity regulations in 1993.  Criteria and Procedures for Determining Conformity to State or Federal Implementation Plans of Transportation Plans, 58 Fed. Reg. 62188 (Nov. 24, 1993).  Those

regulations have been subsequently revised and are codified at 40 C.F.R. Part 93, subpart A.  The Transportation Conformity regulations apply to all nonattainment and maintenance areas for transportation-related criteria pollutants, including particulate matter and carbon monoxide ("CO").  40 C.F.R. § 93.102(b).

Under the regulations, if a non-exempt federally-approved or funded transportation project will be constructed in a nonattainment or maintenance area for the CO, PM10, or PM2.5 NAAQS, that project "must not cause or contribute to any new localized CO, PM10, and/or PM2.5 violations, increase the frequency or severity of any existing CO, PM10, and/or PM2.5 violations, or delay the timely attainment of any NAAQS or any required interim emissions reductions or other milestones in CO, PM10, and PM2.5 nonattainment and maintenance areas."  40 C.F.R. § 93.116(a); *see also id.* at § 93.101 (defining terms for the Transportation Conformity regulations, including "FHWA/FTA project").  Certain projects must complete a hot-spot analysis to meet this requirement.  This criterion, however, "is satisfied without a hot-spot analysis in PM10 and PM2.5 nonattainment and maintenance areas for FHWA/FTA projects that are <u>not</u> identified in § 93.123(b)(1)."  *Id.* (emphasis added).  In other words, a hot-spot analysis is only required for the types of projects listed in 40 C.F.R. § 93.123(b)(1):

      (i)      New highway projects that have a significant number of diesel vehicles, and expanded highway projects that have a significant increase in the number of diesel vehicles;

      (ii)     Projects affecting intersections that are at Level-of-Service D, E, or F with a significant number of diesel vehicles, or those that will change to Level-of-

Service D, E, or F because of increased traffic volumes from a significant number of diesel vehicles related to the project;

(iii)   New bus and rail terminals and transfer points that have a significant number of diesel vehicles congregating at a single location;

(iv)   Expanded bus and rail terminals and transfer points that significantly increase the number of diesel vehicles congregating at a single location; and

(v)   Projects in or affecting locations, areas, or categories of sites which are identified in the PM10 or PM2.5 applicable implementation plan or implementation plan submission, as appropriate, as sites of violation or possible violation.

40 C.F.R. § 93.123(b)(1).  If a project falls within one of these categories, it is called a "project of local air quality concern" (or "project of air quality concern," abbreviated as "POAQC").  U.S. Environmental Protection Agency, *PM Hot-spot Guidance: Transportation Conformity Guidance for Quantitative Hot-spot Analyses in PM2.5 and PM10 Nonattainment and Maintenance Areas* B-1—B-4 (Oct. 2021), available at https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1013C6A.pdf (hereinafter, the "EPA Hot-spot Guidance").  If a project is not a project of air quality concern, no hot-spot analysis is required.  40 C.F.R. § 93.116(a); *see also* EPA Hot-spot Guidance at 1-7, B-1.

The Transportation Conformity regulations also require federal agencies to allow for a public comment process and an opportunity for interagency consultation to take place before issuing a conformity determination.  40 C.F.R. §§ 93.105(c), (e).  The public comment process need not be as formal as the Administrative Procedure Act's ("APA") notice-and-comment requirements.  *Hall v. Bellard*, 157 Fed. Appx. 992, 994 (9th Cir. 2005) ("Only 'rule making,'

however, is subject to notice and comment. . . . [C]onformity determinations are not rules, but case-by-case assessments of whether a plan or program meet specific criteria.  Therefore, the APA rule-making requirements do not apply.").  Nonetheless, the Transportation Conformity regulations state that "[a]ffected agencies making conformity determinations on transportation plans, programs, and projects shall establish a proactive public involvement process which provides opportunity for public review and comment by, at a minimum, providing reasonable public access to technical and policy information considered by the agency at the beginning of the public comment period and prior to taking formal action on a conformity determination . . . ."  40 C.F.R. § 93.105(e).

### III.    FACTUAL BACKGROUND

#### A.  Origin of this Litigation and Environmental Reviews

Plaintiffs' lawsuit centers around Caltrans' proposed reconstruction of existing highway interchanges that connect local roadways in South Fresno to California State Route 99.  First Am. Compl., ECF No. 14 at 1.  According to Caltrans, the Project's purpose is "to improve traffic circulation by bringing the old interchanges, which were constructed in 1965, into compliance with modern design standards."  Mem. of Points and Authorities, ECF No. 30-2 at 6.  Caltrans says the Project "will add sidewalks and crosswalks for pedestrians, add shoulders wide enough for bicycle use, add features to make the facility accessible to those with disabilities, and add an Electric Vehicle charging station within Fresno County."  Id. at 7.  Plaintiffs allege the Project will harm the environment by allowing increased traffic flow, facilitating further industrialization of the South Fresno area, and exacerbating pollution burdens shouldered by the local community.  ECF No. 14 at 4.

The Project sits within the San Joaquin Valley Air District, which is currently a CAA nonattainment area subject to a SIP for PM2.5 and a maintenance area subject to a maintenance plan for PM10.  San Joaquin Valley Air Pollution Control District, *Ambient Air Quality Standards & Attainment Status*, https://ww2.valleyair.org/air-quality-information/ambient-air-quality-standards-valley-attainmnet-status/ (last visited Nov. 14, 2023); *see also* Redesignation of San Joaquin Valley Air Basin PM-10 Nonattainment Area to Attainment; Approval of PM-10 Maintenance Plan, 73 Fed. Reg. 66759 (Nov. 12, 2008).  The Project is thus subject to the CAA's transportation conformity requirements, and FHWA was required to issue a conformity determination for the Project before reconstruction could begin.

Caltrans also conducted environmental reviews for the Project under both the National Environmental Policy Act ("NEPA")[1] and the California Environmental Quality Act ("CEQA").  Concurrent with the NEPA and CEQA reviews, Caltrans conducted analyses for CAA transportation conformity.

Caltrans later submitted its CAA conformity analyses to FHWA and asked that FHWA issue a determination that the Project conforms with the San Joaquin Valley's SIPs and maintenance plans.  In July 2020, Caltrans submitted a memorandum to EPA, FHWA, and other interagency consultation partners that described the Project and recommended a finding that it is not a "Project of Air Quality Concern."  Caltrans, *Air Quality Conformity Analysis – South Fresno State Route 99 Corridor* (Aug. 24, 2022), attached as Exhibit 2 at 36.[2]  In August 2020, EPA and FHWA both concurred that the Project is not a POAQC, and therefore no hot-spot

---

[1] Caltrans conducted the NEPA review for the Project under authority assigned to it by FHWA pursuant to 23 U.S.C. § 327.

[2] The page numbers used in this motion are the PDF or ECF-generated page numbers.

analysis would be required.  Ex. 2 at 43-49.  In October 2021, Caltrans then put out a Draft Environmental Assessment/Environmental Impact Report ("EA/EIR") for the Project for a 51-day public comment period.  Caltrans, *Draft Environmental Impact Report/Environmental Assessment* (Sept. 2021), attached as Exhibit 3; Caltrans, *Final Environmental Impact Report/Environmental Assessment with Finding of No Significant Impact* at 2 (Jan. 2023), attached as Exhibit 4 (describing public engagement processes for the Project).  This Draft EIR/EA included both the environmental reviews required for NEPA and CEQA and included analysis of CAA conformity for the Project.  Draft EA/EIR, Ex. 3 at 98-119, 125-77.  The Draft EIR/EA referenced the July 2020 memorandum and noted that FHWA and EPA agreed the Project was not a POAQC.  Draft EA/EIR, Ex. 3 at 106.  Caltrans also held a two-hour virtual public hearing for the Project on November 4, 2021.  Final EA/EIR, Ex. 4 at 2.  Upon request, a Spanish version of the Draft EA/EIR was circulated for a 45-day public comment period on December 15, 2021.  *Id.*

In late-August 2022, Caltrans sent a final "Air Quality Conformity Analysis" to FHWA.  Ex. 2 at 1.  The Analysis reiterated that the Project is not a POAQC, that no hot-spot analysis is required, and that the Project conforms with the San Joaquin Valley's implementation plans.  *See generally* Ex. 2 at 3-15.  On October 3, 2022, FHWA issued a formal determination that the Project meets the requirements of CAA conformity.  Letter from Antonio Johnson, Director of Planning, Environment, & Right of Way at FHWA, to Diana Gomez, Director of California Department of Transportation District 6 (Oct. 3, 2022), attached as Exhibit 5.  In January 2023, Caltrans published its Final EA/EIR, which includes further discussion of CAA conformity and responses to some conformity-related comments.  Final EA/EIR, Ex. 4 at 105-25, 239-305.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B. This Litigation

Plaintiffs now challenge Caltrans' NEPA review of the Project and FHWA's CAA conformity determination.[3]   Specifically, Plaintiffs argue that FHWA's conformity determination was arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A).   Their claim has three sub-arguments:   one substantive and two procedural in nature.

First, Plaintiffs allege it was arbitrary and capricious for FHWA to conclude the Project was not a POAQC and that no hot-spot analysis was required.   In Plaintiffs' view, FHWA should have required a hot-spot analysis because the Project falls within either the first or second definitions of a POAQC listed in 40 C.F.R. § 93.123(b)(1)(i)-(ii).   ECF No. 14 at 48.

Second, Plaintiffs claim that FHWA failed to provide for adequate public consultation on the conformity determination in alleged violation of EPA's Transportation Conformity regulations.   ECF No. 14 at 46-47.   In particular, Plaintiffs allege that FHWA was required but failed to publish a notice of the conformity determination in the *Federal Register* and failed to otherwise notify the public of its rationale for why a hot-spot analysis was not required.   *Id.* at 46.   Moreover, Plaintiffs allege that FHWA was required but ultimately failed to provide reasonable public access to particular technical and policy documents, including the July 2020 memorandum and the August 2022 Air Quality Conformity Analysis.   *Id.* at 47.

Finally, Plaintiffs claim that FHWA failed to provide adequate interagency consultation on the conformity determination.   *Id.* at 47-48.   Plaintiffs allege that FHWA did not provide sufficient information to interagency consultation partners, like the U.S. EPA, about why a hot-

---

[3] Plaintiffs' lawsuit originally included other state law claims against Caltrans. ECF No. 14 at 52-59.   Those state law claims have since been dismissed.   *See* ECF No. 48 ("the Court hereby GRANTS State Defendants' motion to dismiss (Doc. 30) as to the state law claims only, because those aspects of the motion are now unopposed.").

spot analysis was not required. *Id.* They further allege that FHWA failed to provide the August 2022 Air Quality Conformity Analysis to interagency consultation partners, such as EPA. *Id.* at 47.

## IV.     STANDARD OF REVIEW

A request for voluntary remand without vacatur is subject to the equitable discretion of the court. *See, e.g., Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992-94 (9th Cir. 2012) (weighing equitable factors in exercising discretion to remand to EPA without vacatur); *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995).

## V.     ARGUMENT

The Court should remand FHWA's CAA conformity determination to allow FHWA to reconsider its decision. On remand, FHWA plans to address the alleged procedural deficiencies Plaintiffs identify in their Complaint. ECF No. 14 at 44-46. In particular, FHWA plans to make the August 2022 Air Quality Conformity Analysis available for public comment, along with its attached July 2020 memorandum. FHWA also plans to provide the documents to interagency consultation partners for their review and comment. *See* Johnson Decl. ¶¶ 6-7, attached as Exhibit 1. Upon reviewing any public comments received and considering any feedback from the interagency consultation partners, FHWA will reconsider its conformity determination. FHWA may affirm its determination or decide that changes are appropriate. That decision will have direct impact on this litigation.

The Court should not vacate the conformity determination in the interim because courts are not allowed to vacate an agency's decision without first finding that the decision is unlawful, the Court has not reached a merits decision, and this motion seeks remand in lieu of a merits

decision.  Waiting for a merits decision would both waste judicial resources and unnecessarily delay FHWA commencing its additional public comment and interagency consultation processes.  Keeping the conformity determination in place during the remand process will not risk harm to the environment or prejudice Plaintiffs.  Reconstruction of the Project will not begin until October 2025, and FHWA anticipates it will complete its remand proceedings within this nearly two-year interim period.  Johnson Decl. ¶ 7; *see also* Caltrans, *South Fresno State Route 99 Corridor project*, available at https://dot.ca.gov/caltrans-near-me/district-6/district-6-projects/06-0h240 (last visited Nov. 13, 2023) (stating reconstruction of one highway interchange will begin in October 2025 and the other in January 2026).  The Court should thus grant Federal Defendants' request for remand without vacatur.

**A. FHWA is entitled to reconsider its own decision.**

"Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo*, 621 F.2d at 1086.  Thus, where an agency's action has been challenged in court, "the agency may request a remand (without confessing error) in order to reconsider its previous position." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018); *see also Cal. Cmtys. Against Toxics*, 688 F.3d  at 992 ("A federal agency may request remand in order to reconsider its initial action.").  Courts "commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources" on unnecessary or premature judicial review.  *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).  Thus, unless the agency's request is "frivolous or in bad faith," "a remand is usually appropriate." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *see also*

*Cal. Cmtys. Against Toxics* , 688 F.3d at 992 ("Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith.").  This remains true even when a party to the litigation objects to a voluntary remand.  *See Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) ("[W]hen an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons.").

FHWA's request for a remand is neither frivolous nor made in bad faith.  Two of Plaintiffs' three arguments focus on what Plaintiffs view as procedural deficiencies in FHWA's conformity process.  ECF No. 14 at 44-46.  In particular, Plaintiffs' procedural claims focus on what they argue were inadequate opportunities for the public and interagency consultation partners to comment on the two documents that FHWA will hold a comment period for on remand.  *See, e.g., id.* at 45 ("Defendants failed to provide reasonable public access to technical and policy documents on which its conformity determination was based, including by failing to notify the public of the existence of or make readily available to the public the July 2020 interagency consultation memorandum, [and] the August 2022 Air Quality Conformity Analysis . . . ."); *id.* at 45 ("Defendants failed to provide the August 2022 Air Quality Conformity Analysis to interagency consultation partners . . . .").  By making the August 2022 Air Quality Analysis and its attached July 2020 Memorandum both available for public comment and for interagency partners to review, Federal Defendants will address the procedural deficiencies Plaintiffs allege.

FHWA's document review also indicates that neither Plaintiffs nor any commenter raised concerns that a hot-spot analysis should have been conducted for the Project.  Indeed, no comments to Caltrans's Draft EA/EIR document included the phrase "hot-spot."  Final EA/EIR, Ex. 4 at 239-305 (providing all public comments received, none of which reference hot-spot analyses).  Granting remand would allow Plaintiffs and other commenters to voice their opinions about a need for a hot-spot analysis, which FHWA would consider.  Johnson Decl. ¶¶ 6-7.

**B.  Remand without vacatur is most appropriate here.**

When issuing a remand, courts retain some discretion to fashion appropriate remedies. *See* 5 U.S.C. § 702 (nothing in the APA affects "the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground").  Here, remanding without vacatur is appropriate for three reasons.[4]

First, Federal Defendants seek remand before a decision on the merits.  Without a decision on the merits, the Court lacks authority to vacate FHWA's action.  The Ninth Circuit held earlier this year that courts lack the authority to vacate an agency's decision without "first holding it unlawful." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 594 (9th Cir. 2023).  According to the Ninth Circuit, there is no "precedent or historical examples supporting the power of courts to vacate executive action not first held unlawful." *Id.*  Here, FHWA does not concede legal error with respect to its conformity determination.  Nor is it required to do so to secure a voluntary remand. *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) ("That is not to say that an agency need confess error or impropriety in order to

---

[4] Federal Defendants note that some Justices on the Supreme Court have recently questioned whether vacatur is an available remedy under the APA at all. *See United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorsuch, J., concurring).  As explained in the text, however, the relief sought in this motion is consistent with currently controlling Ninth Circuit precedent.

obtain a voluntary remand.").  There is thus no basis to vacate FHWA's conformity

determination, and the Court should allow the agency to take the steps necessary to reconsider its

decision now instead of waiting for a ruling on the merits.[5]  *See Ctr. for Biological Diversity v.*

*Bureau of Land Mgmt.,* 69 F.4th 588, 592 (9th Cir. 2023) (noting it is a "rare instance[] in which

courts have impermissibly remanded and vacated rules without first holding them unlawful.").

      Second, even if this Court applies the equitable analysis normally used to decide whether

to vacate agency action *after* a ruling on the merits, remand without vacatur is still the correct

outcome.  Even a "flawed rule need not be vacated. . . . Indeed, 'when equity demands, the

regulation can be left in place while the agency follows the necessary procedures.'"  *Cal. Cmtys.*,

688 F.3d at 992 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir.

1995).  "Whether agency action should be vacated depends on how serious the agency's errors

are 'and the disruptive consequences of an interim change that may itself be changed.'"  *Id.* at

992 (quoting *Allied-Signal, Inc. v. U.S. NRC*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see also,*

*e.g., Cook Inletkeeper v. EPA*, 400 F. App'x 239, 241 (9th Cir. 2010) (granting motion for

voluntary remand but leaving EPA permit in place "to avoid the disruptive consequences that

would flow from vacating the permit").  The Ninth Circuit has also looked to "whether the

agency would likely be able to offer better reasoning or whether by complying with procedural

rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's

decision make it unlikely that the same rule would be adopted on remand."  *Pollinator*

*Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

---

[5] If this Court denies Federal Defendants' motion for voluntary remand without vacatur,
Federal Defendants request the opportunity to address the merits as required by *In re Clean
Water Act Rulemaking*, 60 F.4th at 596.

MOTION FOR VOLUNTARY REMAND
CASE NO. 1:23-CV-00353-JLT-EPG
PAGE 14

FHWA cannot prejudge the outcome, but it believes that "it could adopt the same rule on remand." *Id.* The remand will give FHWA the opportunity to address the two procedural issues that Plaintiffs claim beset FHWA's initial conformity determination by making the July 2020 memorandum and August 2022 Air Quality Conformity Analysis available for public comment and engaging in further interagency consultation on these documents and the need for a hot-spot analysis. Whether FHWA comes to the same conclusions will depend on the feedback FHWA receives from public commenters and interagency consultation partners during the remand period. If FHWA does not receive any comments that warrant a change in the conformity determination, then FHWA may reach the same conclusion on remand. On the other side of the scale, vacatur would unnecessarily unravel months of consideration by the Agency, unchallenged analyses that underpin FHWA's conformity determination, and other agency processes that contributed to the initial decision.

Finally, any prejudice Plaintiffs may suffer from a delay in the litigation is attenuated by the distant construction schedule for the Project. Reconstruction of the North Avenue highway interchange will not begin until January 2026, and reconstruction of the American Avenue interchange will not begin until October 2025. Caltrans, *South Fresno State Route 99 Corridor project*, available at https://dot.ca.gov/caltrans-near-me/district-6/district-6-projects/06-0h240 (last visited Nov. 13, 2023). In other words, the earliest reconstruction for the highway project will not begin for nearly two years.

On the other hand, vacatur may prejudice Caltrans's interests by unnecessarily halting their pre-construction schedule. Caltrans is completing additional pre-construction activities, such as obtaining a "Right of Way Certification." *Id.* Federal Defendants were also informed by

Caltrans's counsel that Caltrans is working through other local permitting and approval processes.  While difficult to predict with certainty, FHWA does not anticipate the remand proceedings will take over a year to complete, let alone until October 2025 or January 2026. Johnson Decl. ¶ 7.  It would be inefficient to vacate the conformity determination and pause all of Caltrans's other pre-construction activities while FHWA undertakes the additional public and interagency consultation processes on remand.  Balanced against the lack of harm to Plaintiffs, the conformity determination should not be vacated during the remand period.

At bottom, leaving FHWA's conformity determination in place during remand will serve the interests of regulatory efficiency and judicial economy by allowing FHWA to address Plaintiffs' procedural concerns without prematurely reaching the merits of the litigation or unduly prejudicing Plaintiffs or Caltrans.

## VI.    CONCLUSION

For these reasons, the Court should grant Federal Defendants' motion for voluntary remand without vacatur and hold the claims and existing deadlines against FHWA in abeyance pending the remand proceedings.

DATED: December 4, 2023          Respectfully submitted,

*/s/ Paul A. Caintic*
Paul A. Caintic (D.C. Bar No. 1779847)
United States Department of Justice
Environment & Natural Resources Division
150 M Street, N.E.
Washington, D.C. 20002
Tel:  (202) 514-2593
paul.caintic@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that today, December 4, 2023, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to all counsel of record in this case.

*/s/ Paul A. Caintic*
PAUL A. CAINTIC
Trial Attorney